FILED by CG D.C.

May 8, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-20170-CR-SCOLA/TORRES

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(1)(A)
18 U.S.C. § 982(a)(7)
18 U.S.C. § 2

UNITED STATES OF AMERICA

vs.

ERNESTO ESPINOSA,

        Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a Federal health care program, as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare programs covering different types of benefits were separated into different program "parts." "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.

4. Providers who enrolled in Medicare were required to certify, among other things, that they would abide by the Medicare laws, including the Federal anti-kickback statute, and that they would not present false or fraudulent claims for payment by Medicare or submit claims with deliberate ignorance or reckless disregard for their truth or falsity.

5. CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS contracted with different private companies to administer the Medicare Part A program throughout different parts of the United States. In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators ("Palmetto"). As administrator, Palmetto was to receive, adjudicate and pay claims submitted by HHA providers under the Part A program for home health claims. Additionally, CMS separately contracted with companies in order to review HHA providers' claims data. On December 15, 2008, CMS contracted with SafeGuard Services, a Zone Program Integrity Contractor. SafeGuard Services safeguarded the Medicare Trust Fund by reviewing HHA providers' claims for potential fraud, waste, and/or abuse.

6. Physicians, clinics and other health care providers, including HHAs, that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health

care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare information number, the services that were performed for the beneficiary, the date that the services were provided, the cost of the services, and the name and provider number of the physician or other health care provider who ordered the services.

### Part A Coverage and Regulations

### Reimbursements

7. The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits. A patient qualified for home health benefits only if the patient:

    (a)   was confined to the home, also referred to as homebound;

    (b)   was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("POC"); and

    (c)   the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy; the beneficiary was confined to the home; that a POC for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the POC.

### Record Keeping Requirements

8. Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of the patients, as well as records documenting the actual treatment of patients to whom services

3

were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

9.  Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare were a (i) POC that included the physician order, diagnoses, types of services/frequency of visits, prognosis/rehab potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals and the physician's signature; and (ii) a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services.

10. Medicare Part A regulations required provider HHAs to maintain medical records of every visit made by a nurse, therapist, and home health aide to a beneficiary. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any instruction provided to the patient and the understanding of the patient, and any changes in the patient's physical or emotional condition. The home health nurse, therapist and aide were required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records were generally created and maintained in the form of "clinical notes" and "home health aide notes/observations."

## The Defendant, Related Companies and Individuals

11. General Health Medical, Inc. ("General Health") was a Florida corporation purportedly doing business in Miami, Florida.

12. HHA 1 was a Florida corporation purportedly doing business in Miami Lakes, Florida.

13. HHA 2 was a Florida corporation purportedly doing business in Miami, Florida.

14. HHA 3 was a Florida corporation purportedly doing business in Miami, Florida.

15. HHA 4 was a Florida corporation purportedly doing business in Miami, Florida.

16. HHA 5 was a Florida corporation purportedly doing business in Miami, Florida.

17. HHA 6 was a Florida corporation purportedly doing business in Miami, Florida.

18. HHA 7 was a Florida corporation purportedly doing business in Miami, Florida.

19. HHA 8 was a Florida corporation purportedly doing business in Miami, Florida.

20. HHA 9 was a Florida corporation purportedly doing business in Miami, Florida.

21. HHA 10 was a Florida corporation purportedly doing business in Lauderhill, Florida.

22. HHA 11 was a Florida corporation purportedly doing business in Hialeah, Florida.

23. HHA 12 was a Florida corporation purportedly doing business in Hialeah, Florida.

24. HHA 13 was a Florida corporation purportedly doing business in Miami, Florida.

25. Ansi Consulting Services Inc. ("Ansi") was a Florida corporation purportedly doing business in Hialeah, Florida.

26. Exposito Consulting Inc. ("Exposito") was a Florida corporation purportedly doing business in Hialeah, Florida.

27. Defendant **ERNESTO ESPINOSA** was the owner and operator of General Health, Ansi and Exposito.

28. Individual 1 was the owner and president of HHA 1.

29. Individual 2 was the registered agent of HHA 6 and the operator and true owner of HHA 8.

30. Individual 3 was a resident of Miami-Dade County and a Medicare beneficiary.

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1. The General Allegations section of this Information is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around January 2010, and continuing through in or around June 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ERNESTO ESPINOSA,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with Individual 1, Individual 2, Individual 3, and others known and unknown to the United States Attorney, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

3. It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of

false and fraudulent claims to Medicare, including claims for home health services that were medically unnecessary, not eligible for Medicare reimbursement, and not provided; (b) concealing the submission of false and fraudulent claims to Medicare; and (c) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4. **ERNESTO ESPINOSA**, Individual 2, and their co-conspirators paid and caused the payment of kickbacks and bribes to Medicare beneficiaries, including to Individual 3, to induce their referral to home health agencies, for home health services that were medically unnecessary, not eligible for Medicare reimbursement, and not provided.

5. **ERNESTO ESPINOSA**, Individual 2, and their co-conspirators, directly and through General Health, paid doctors who signed false and fraudulent medical records, including home health prescriptions and plans of care, for Medicare beneficiaries recruited by **ESPINOSA** and Individual 2.

6. **ERNESTO ESPINOSA** and Individual 2 instructed Medicare beneficiaries, including Individual 3, on how to obtain false and fraudulent medical records, such as home health care prescriptions and plans of care from a doctor, including what to say to the prescribing doctor.

7. **ERNESTO ESPINOSA** solicited and received kickbacks and bribes from home health agencies, in exchange for referring Medicare beneficiaries that **ESPINOSA** and Individual 2 recruited for services that were medically unnecessary, not eligible for Medicare reimbursement, and not provided.

8. **ERNESTO ESPINOSA** incorporated and caused to be incorporated Ansi Consulting and Exposito Consulting for the purpose of concealing, receiving, and paying kickbacks and bribes solicited and received from home health agencies.

9. Individual 2 distributed and caused to be distributed the kickback payments from home health agencies to **ERNESTO ESPINOSA**, directly and through Ansi Consulting and Exposito Consulting.

10. **ERNESTO ESPINOSA**, Individual 2, and their co-conspirators sent the Medicare beneficiaries that they recruited, including Individual 3, to multiple home health agencies in order to receive kickback payments from additional home health agencies.

11. **ERNESTO ESPINOSA**, Individual 1, Individual 2, Individual 3, and their co-conspirators submitted and caused home health care agencies, including, among others, HHA 1, HHA 2, HHA 3, HHA 4, HHA 5, HHA 6, HHA 7, HHA 8, HHA 9, HHA 10, HHA 11, HHA 12, and HHA 13, to submit claims that falsely and fraudulently represented that home health therapies were medically necessary, prescribed by a doctor, and had been provided to Medicare beneficiaries.

12. **ERNESTO ESPINOSA** and his co-conspirators used the proceeds from the false and fraudulent Medicare claims for their own use and benefit, the benefit of others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
## Health Care Fraud
## (18 U.S.C. § 1347)

1. The General Allegations section of the Information is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around January 2010, and continuing through in or around June 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ERNESTO ESPINOSA,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program.

### Purpose of the Scheme and Artifice

3. It was the purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare; (c) concealing the receipt and transfer of fraud proceeds; and (d) diverting fraud proceeds for the personal use and benefit of themselves and others, and to further the fraud.

### The Scheme and Artifice

4. The allegations contained in paragraphs 4 through 12 of the Manner and Means section of Count 1 of this Information are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Act in Execution or Attempted Execution of the Scheme or Artifice

5. On or about June 2, 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, **ERNESTO ESPINOSA**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the defendant caused the submission of false and fraudulent claim number 21429503407307FLR seeking $2,420.01, and representing that HHA 4 provided home health services to Individual 3, a Medicare beneficiary, pursuant to a physician's prescriptions.

In violation of Title 18, United States Code, Sections 1347 and 2.

### COUNT 3
### Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks
### (18 U.S.C. § 371)

1. The General Allegations section in this Information is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around January 2010, and continuing through in or around May 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ERNESTO ESPINOSA,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with Individual 1, Individual 2, Individual 3 and others known and unknown to the United States Attorney:

    a.    to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program in violation of Title 18, United States Code, Section 371, and to commit an offense against the United States, that is,

    b.    to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

    c.    to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

    d.    to violate Title 42, United States Code, Section 1320a-7b(b)(2)(B), by knowingly and willfully offering and paying any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good,

facility, service or item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

### Purpose of the Conspiracy

3.  It was a purpose of the conspiracy for the defendant and his co-conspirators to unjustly enrich themselves by, among other things: (a) offering and paying kickbacks and bribes in return for referring Medicare beneficiaries to home health agencies to serve as patients; (b) soliciting and receiving kickbacks and bribes in return for referring Medicare beneficiaries to home health agencies to serve as patients; (c) concealing and causing the concealment of kickbacks and bribes and false and fraudulent claims, including by incorporating or causing the incorporation of shell companies for the purpose of receiving, concealing, and paying kickbacks and bribes; and (d) diverting kickback and fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the conspiracy.

### Manner and Means of the Conspiracy

4.  The allegations contained in paragraphs 4 through 12 of the Manner and Means section of Count 1 of this Information are re-alleged and incorporated by reference as though fully set forth herein as a description of the manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy in Count 4.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

1. On or about May 11, 2015, Individual 1 signed or caused to be signed check number 2022 in the amount of $4,800 made payable to Exposito Consulting as a kickback for referring Medicare beneficiaries to HHA 1.

2. On or about May 11, 2015, **ERNESTO ESPINOSA** deposited check number 2022 in the amount of $4,800 into account ending in x1474 in the name of Exposito Consulting.

3. On or about May 14, 2015, **ERNESTO ESPINOSA** withdrew or caused to be withdrawn $200 in cash from account ending in x1474 in the name of Exposito Consulting.

All in violation of Title 18, United States Code, Section 371.

## COUNT 4
### Receipt of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(1)(A))

1. Paragraphs 1-10, 12, 25-28, and 30 of the General Allegations section in this Information are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about May 11, 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ERNESTO ESPINOSA,**

did knowingly and willfully solicit and receive remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check number 2022 in the amount of $4,800 drawn on HHA 1's account ending in x4858 and made payable to Exposito Consulting, in return for referring an individual to a home health agency for the furnishing and arranging of home health services, for which payment may be made in whole and in part by Medicare.

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A), and Title 18, United States Code, Section 2.

## **FORFEITURE**
### (18 U.S.C. § 982(a)(7))

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which defendant, **ERNESTO ESPINOSA**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Sections 371, 1347, 1349 or Title 42, United States Code, Section 1320a–7b as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant,

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

ROBERT ZINK
CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

ALLAN MEDINA
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

By: 
JAMIE DE BOER
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|
| v. | |
| ERNESTO ESPINOSA, | **CERTIFICATE OF TRIAL ATTORNEY*** |
| _____Defendant._____ / | **Superseding Case Information:** |

**Court Division**: (Select One)
- ✓ Miami ___   ___ Key West ___
- ___ FTL   ___ WPB   ___ FTP

| | | |
|---|---|---|
| New defendant(s) | Yes ___ | No ___ |
| Number of new defendants | ___ | |
| Total number of counts | ___ | |

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:  (Yes or No)   Yes
   List language and/or dialect   Spanish

4. This case will take __5__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                            (Check only one)

   | I   | 0 to 5 days     | ✓ | Petty   | ___ |
   |-----|-----------------|---|---------|-----|
   | II  | 6 to 10 days    | ___ | Minor   | ___ |
   | III | 11 to 20 days   | ___ | Misdem. | ___ |
   | IV  | 21 to 60 days   | ___ | Felony  | ✓ |
   | V   | 61 days and over| ___ | | |

6. Has this case previously been filed in this District Court?   (Yes or No)   No
   If yes: Judge _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?   Yes ___   No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   Yes ___   No ✓

_____
JAIME DE BOER
DOJ TRIAL ATTORNEY
COURT ID NO. 5502601

*Penalty Sheet(s) attached                                                    REV 8/13/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**       **ERNESTO ESPINOSA**

**Case No:** _____

Count #:  1

Title 18, United States Code, Section 1349

Conspiracy to Commit Health Care Fraud

**\*Max Penalty**: Ten (10) years' imprisonment

Counts #:  2

Title 18, United States Code, Section 1347

Health Care Fraud

**\*Max Penalty**: Ten (10) years' imprisonment

Count #:  3

Title 18, United States Code, Section 371

Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

\*Max Penalty: Five (5) years' imprisonment

Counts #:  4

Title 42, United States Code, Section 1320a-7b(b)(1)(A)

Receipt of Kickbacks in Connection with a Federal Health Care Program

\*Max Penalty: Ten (10) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| Ernesto Espinosa, | ) | |
| Defendant | ) | |

**WAIVER OF AN INDICTMENT**

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*